Good morning. Christopher Stender for the petitioner. Armando Marmolejo-Campos. I would like to reserve two minutes out of my 15 minutes for potential rebuttal. You must have been good in law school. I tried hard. Thank you, Your Honor. The petitioner's aggravated DUI conviction does not constitute a crime involving moral turpitude. Therefore, this court should reverse the immigration judge and the BIA's finding because they erred when they held that it was a CIMT. I believe there are three strong reasons why Arizona revised statute 281383A1 does not constitute a CIMT. First, the state of Arizona does not have to show a culpable mental state for a conviction of the statute. Second, the statute is regulatory in nature and, therefore, is not a crime involving moral turpitude. And third, the statute does not involve an intent by a defendant to inflict injury upon another nor an intent to use a dangerous instrumentality on another. No, here's a little bit how I focus and struggle with this issue. That from the standpoint, you know, in the Ninth Circuit, we've got the Torres Varela decision, the BIA decision of the multiple DUIs, which essentially then in Moreno-Salmoron, our Ninth Circuit case, so we're operating in a world where multiple DUIs are not moral turpitude, right? Correct. Then we have Lopez-Mesa, the BIA decision, which then we have Hernandez-Martinez in our Ninth Circuit. And what it seems to me that it boils down to, to a large extent, is whether Hernandez-Martinez overrules Lopez-Moreno-Mesa or whether that survives. And, I mean, it seems totally incongruous to me that multiple DUIs are not moral turpitude, but that a combined could be. But, on the other hand, sometimes far be it for me to find reason in the law. I, you know, I mean, I will go to my grave saying that multiple DUIs are crimes of moral turpitude. I mean, you've already had a DUI, you get another one, and that's so obvious to me. But it's not our precedent. So then... Correct. And probably whatever we do here will go on bonk, and then everything will be up for grabs. But that, you know, this is sort of where we are. What the board has always held and what the Ninth Circuit has always held, that if individually a crime does not involve moral turpitude, the second, the third, and amalgamation of those individual crimes lumped together don't. Because if they don't individually, if you add them up, they don't either. What this court... Wait, but that's different. Crimes, you're saying three different crimes committed at three different times, whereas driving drunk on a suspended license is two crimes committed at the same time. There is a difference, don't you think? I think the difference is if you look at the Arizona statute, there's no culpable mental state. The state of Arizona does not have to prove any willful action, any intentional action, and no knowing action. That's the difference. No, except for Hernandez-Martinez talks about you've got to be driving. So then it's not a categorical. But, you know, the one way that I see that you would lose, all right, the one conceivably principled way that you could lose would be to say that Hernandez-Martinez does not overrule Lopez Mesa, and therefore the modified categorical approach can be looked at in the case. And in all of these cases, they're driving. You know, these people are driving. They're not sitting in their driveway not driving. So that, admittedly, it's all like it's in Disneyland, but I'm just saying from if you follow your precedent and that's the one principled way, that I would be able to see that you would lose. Well, we were in Arizona very disappointed that the Hernandez-Martinez court didn't reach the issue. They found the statute divisible, and they found the evidence deficient. So it left the door open. What happens if the government could prove actual control, actual driving? So do you think Hernandez-Martinez overrules Lopez Mesa? It overrules it as far as it's not a categorical. It's a modified categorical for sure. But Hernandez-Martinez never reached the issue itself, which is before the court today, I believe, in at least my two cases and probably all three, is if they do show operation of the vehicle on a suspended license, whether that is a CIMT, a moral turpitude in his crime. And I think the answer to that is it's not. You're not saying those words. Well, you know, Judge Wardlaw made it very clear in Hernandez-Martinez that they were not deciding this case, even though the guy was in the car sitting, not driving, and this is driving. But so that case certainly does not hold that if you're driving, it is a turpitude in his crime. It never reached the issue. The government argues it's suggestive of that, but the issue was never reached. They found that it's a divisible statute and never reached the issue if there was actual control, whether it is moral turpitudinous or not. In analyzing the BIA case law, the Ninth Circuit case law in the state of Arizona, and I will get into this in some detail, if you look at the elements of the statute, it is not turpitudinous, and there is absolutely no support for that position. Moral turpitude has no fixed or defined definition. It's the inherent nature of the crime is defined by the statute and interpreted by the courts and limited by the record of conviction, which determines whether the offense is one involving moral turpitude. Well, even Hernandez said DOI is despicable. It's certainly no one is going to claim that it's a good citizen will do this not only once, twice, but three times. But as I read Hernandez, even though it's despicable, they're not holding in this case, at least in Hernandez when he's sitting in the car, that it's turpitudinous. Correct. Drunk driving is an inherently reckless act, and it is argued that those who drive on a suspended license arguably accept the risk of harm to others, thus exhibiting a degree of depravity constituting moral turpitude. However, the BIA has never held that a crime involving reckless conduct is per se a crime involving moral turpitude. That's not the standard. The Ninth Circuit has always held there must be a willful act, an intentional act. If there's a reckless act, then there has to be an intent to use a dangerous instrumentality to cause some harm. And, of course, the Supreme Court decision in Leo Cal, I think, is somewhat instructive of that and I think has some impact on this case. With all three Petitioners, their license was suspended because of a prior DUI, correct? I can speak to the two that I represent, and I believe, yes, Your Honor, they were both suspended. And when they had their license suspended, isn't it standard part of the practice they're advised of the risk to others on the road by driving and drinking? There is a notification process in Arizona that they are told their license is revoked, canceled, suspended. That is correct. So then how is this not a crime where you're disregarding the law and being deliberately indifferent to the safety of others? Because it's a strict liability offense. It's a regulatory offense, and that's how the State of Arizona has always held it to be. And there's a lack of a mental state. You think the State of Arizona treats driving drunk on a suspended license like a parking violation or a moving ticket? Is that what you're telling me? In fact, Your Honor, I could say the Arizona courts have held that driving under the influence is a malum prohibitum offense. Therefore, the state does not have to show proof of a culpable mental state. That is the law of Arizona. But you have jail time for a conviction of this sort, don't you? Yes, correct. I believe it's a mandatory four years in the state prison. That is correct. However, the Arizona courts have consistently viewed a violation of that statute as a public safety statute. It's regulatory statute, and therefore not a crime involving moral turpitude. Well, if you get your license suspended for being DUI, you know, by the time that happens, you've had a DUI, you've gone to court, you know what the alcohol limit is, they make you do a program, they advise you of all the dangers, and then you know your license is suspended, so then you have, you know, knowledge, and then you willfully go and drive. So why is that not combined together, a willful act? They're two separate statutes. There's no willfulness in the driving drunk. There's no mental state. There's no intention to go out and drive drunk. It's not a willful act. It's not an intentional act. It's notification that your license is suspended. It's an administrative directive. The intent to be proved in obtaining a conviction under aggravated driving under the influence is the intent to ignore a state administrative directive. There is not one case that ever found in the BIA case law that the intent to ignore an administrative directive is sufficient to find moral turpitude. I would characterize this level of intent as a knowing violation of a statutory mandate that an individual may not drive when the status of his or her license has been revoked or suspended. This intent is based on an actor's knowledge of a regulatory obligation and a breach of that obligation. It's not the level of intent that supports a finding that the offense committed is one involving moral turpitude. The Ninth Circuit has determined that a court must focus on the crime categorically as part of the defendant. Some examples, the phrase crime involving moral turpitude has been found in cases involving fraudulent conduct, in cases involving baseness or depravity, even though they have no element of fraud, for example, in spousal abuse, child abuse, first-degree incest cases. However, when an act is only statutorily prohibited rather than inherently wrong, the act will generally not involve moral turpitude. I think that's what we have here. Again, it's a state regulatory offense. There is no evil intent. There's no evil motive. There's no intent to be proven by the prosecution of this case by the state of Arizona. And that is extremely important when the court would look at Leo Cal, when the court would look at the mental state that is necessary for a conviction. And I think also, as I pointed out in my 28-J letter brief, in Fernandez Ruiz v. Gonzalez, this court found that willfulness or evil intent is generally required in order for a crime to be classified as one involving moral turpitude. There is no requirement to be proven by the state of Arizona in order to obtain a conviction for aggravated DUI, even though the license was suspended. Originally, the BIA had held that three crimes involving moral turpitude, three, excuse me, that an aggravated DUI, well, backing up, there's three different ways a person can be convicted of aggravated DUI in Arizona. One is on the suspended license, one is three within five years, and the third, which has never come up, is if somebody is driving with a minor 15 years or younger. Originally, the BIA seemed to suggest that the three convictions within five years would be a moral turpitude crime, but then backed off from that and reversed themselves in the Torres-Varela Court when they looked at individually what involves moral turpitude and the elements of the statute. In the ‑‑ You're at two minutes, just so that you know. I'll reserve. Okay. Thank you. Thank you. May it please the Court, Martha Rabin for the government. Well, I think you know sort of what we're concerned about, and I would like you to address, you know, how this all fits into Murillo, Samara, Samara, Roon, and Hernandez‑Martinez and whether Lopez‑Mesa has been overruled. Yes, Your Honor. Maybe I'm reading the Hernandez‑Martinez case differently, but I just wanted to quote the quote that the court said. We hold that the statute under which Hernandez was convicted is divisible, and strange does not include only crimes of moral turpitude. So it seems to me like a panel of this Court has already decided that at least some portion of the statute that we're talking about here, 1383, is a crime of moral ‑‑ of moral turpitude. And I think that's what Judge Wardlaw made clear. Judge Wardlaw, I think, made clear that DUI alone should not be, and aggravated DUI should not be. So she has made her position clear, but that was not the case. Didn't she say simple DUI? Simple DUI. Yes, Your Honor. The difference isn't between simple and aggravated, or isn't there an Arizona extreme influence? Yes, Your Honor, but I think if I read her opinion, I think it also touches on aggravated DUIs. I think she meant all DUIs under this statutory provision, which includes aggravated DUIs. All aggravated DUIs that are simple DUIs. Well, Your Honor ‑‑ Do you understand the difference that I'm trying to say? Because a simple DUI would be .08. But in this case, we have, what, people at .23, .26. They're barely conscious. Yes, Your Honor. Yeah, I tend to think she was probably talking about just the ‑‑ A DUI alone without priors or without a combination of something else? Yes, Your Honor. I think that's pretty clear from her decision. But from the majority opinion, I think it's also implicit that they also believe that, and maybe that's why she concurred, instead of being just a straight shot opinion. I think there is something to this decision that says that there is an aggravated DUI is ‑‑ some portion of it is a crime of moral turpitude. And so if we look at it that way, what part is it? Well, the board has decided that, and as counsel has indicated, the term moral turpitude is not defined anywhere. You know, a statutory ‑‑ there's no statutory provision that says this is what Congress thinks moral turpitude is under the Immigration and Nationality Act. So looking at the case law, it is clear that fraud is a crime of moral turpitude. And any kind of generally inherently based vile or depraved act that's contrary to accepted rules of morality has been held to be a CMT, a crime involving moral turpitude. In this particular case, what made it aggravated was that there was a mental state, a culpable mental state. It wasn't just a plain vanilla DUI, that he was just drunk on the road. It was the fact that what the board found that was especially aggravating here was that this gentleman knew he was drunk. When you say this gentleman, which one are you talking about? I'm sorry, the ‑‑ in fact, I think both of them did. But the ‑‑ since we're arguing the general issue here, including Roman Roman, I think all of them ‑‑ Okay, so you're talking our cases. You're not talking Hernandez-Martinez or Mar ‑‑ or Lopez-Mazet. No, no, no, I'm talking in general. What the board found in ‑‑ Because we have a lot of people with DUIs here. Yes, Your Honor. In Lopez-Mazet, the aggravating fact was that Lopez-Mazet knew he wasn't allowed to drive. He had a revoked driver's license based on a prior DUI, yet he still in an inebriated DUI state took it upon himself to drive and put others in danger. And that's the complete disregard that I think was what made it so aggravating, was that he not only ‑‑ So I guess what ‑‑ I guess what you're getting at here is what is the culpable state of mind that can't support the conclusion that a violation of this, of Section 28-1383A1, is a crime of moral turpitude. So what is your ‑‑ what do you say the culpable state of mind is? The culpable state of mind is when a driver whose license has been revoked takes it upon himself to then, by a prior DUI, takes it upon himself to then drive in an inebriated DUI state and puts others in danger. Well, let's assume that's a despicable act, and I would say that it was. How does this jibe, then, with the BIA saying that if you have three DUIs, it's not a crime of moral turpitude? Well, because those three prior DUIs did not involve a culpable mental state. They were all ‑‑ The culpable mental state is because the license is revoked? Is that it? Well, that's what made it aggravating. I mean, that's ‑‑ of the two, the combination, I guess, the synergism of the two statutes involved here is what made it aggravating, is that this particular person knew he wasn't allowed to drive. It wasn't as if he was drunk and then assumed the control of the vehicle and took off. This person knew he wasn't allowed to drive and then got drunk and still took off. But driving with a suspended license is not deemed to be a crime of moral turpitude in and of itself. No, Your Honor. But in combination, it seems a certain irreverence for our laws, a certain moral depravity, I would say, takes place when you know how serious this offense is. You know your license has been taken away already for this offense. And yet you still take it upon yourself to get drunk and drive. Yeah, well, you shouldn't do that, and I think it's horrible. But Arizona says driving without a ‑‑ with a suspended license is not a crime of moral turpitude. A DUI, indeed, three DUIs don't involve moral turpitude. It doesn't make sense to say, well, three DUIs do, do not. But driving with a suspended license is a crime. How do you ‑‑ Yeah. I mean, the distinction I'm trying to make is, you know, when you have three separate DUIs, three separate occasions where you are so inebriated that you just take it upon yourself and you drive, and maybe that's why it's a strict liability offense, because you don't know what you're doing. You're basically so inebriated that you just talk. You're drunk before you decide to drive. Okay. Yes. However, a person that knows they're not supposed to be driving, and yet they're still drinking and driving, is a level above. I guess that's the distinction we're trying to make. It's a further aggravation of a certain violation of societal rules where it just becomes immoral, where you know, you know you're not allowed to do that, and yet you do it anyway. Well, I think Judge Nelson is obviously is struggling, and I think that everyone here looks at it from the standpoint that multiple DUIs, it's ridiculous that that's not a kind of moral turpitude. So, but it's the law. And so then when you argue that something that's really, you know, is less culpable is moral turpitude. That's, you know. I wouldn't characterize Your Honor that way. I wouldn't say it's less culpable. I'd say it's more culpable because. We have to to win. That's the. And that's it. You have to convince us of that. But the. But I guess what I'm trying to say, Your Honor, is that, you know, there's a difference between somebody that in an inebriated state takes the control of a vehicle and drives and gets caught. There's a big difference between that and somebody that knows they're not supposed to be driving. They have no authority to drive. They're not licensed to drive because it's been taken away from them because of prior actions like this. They still drive to a bar. They still get drunk. And they still go. Yeah. But the guy who's had two DUIs knows he's not supposed to drink and drive. I mean, why isn't that. That should be a moral turpitude. But the court says it's not. He knows he's not supposed to drink. So why is driving with a suspended license plus a DUI any worse than that? I just think that it's different because society has explicitly said you shall not drive. Well, let me, you know, I'm trying to just see principled arguments on both sides. And if, let's say if you make the argument that the decision in Morello-Salmoron effectively adopts the BIA's reaffirmance of Lopez-Mesa. Lopez-Mesa puts forth, it's a BIA decision, puts forth the logic that you're arguing. And then if you argue that Hernandez-Martinez does not overrule Lopez-Mesa, then we're left with, you know, we're left with Lopez-Mesa. And if you say that Morello-Salmoron effectively adopts Lopez-Mesa, then albeit all of this is, I don't know, is sort of sophistry in a certain way, that seems to be, to me, the most principled argument that can be made for your position. But you still would have to deal with Torres-Morello. Well, Your Honor, I, you know, that decision has not been overruled by the board. The board has said that it was decided on, when it was addressed by the board, it was decided on a different issue. You know, so that's still good law. And so I can't argue, I can take the principled stand and say it may not be the correct decision, but that's the law. And, you know, to say that we that our posture relative to Lopez-Mesa is, I mean, we don't have to follow it. No, you don't. But it looks like it implied in Hernandez-Martinez that it wasn't going to be followed. I don't know. So do you read Hernandez-Martinez for the prospect that they essentially, they established a modified categorical approach? Is that the way that you read it? That they say that there can be crimes of moral turpitude contained in this, but you have to do the modified categorical approach to do it, meaning the person has to be driving and then the other element? Is that what, is that? I, it doesn't say that, Your Honor. I, you know, and so it's hard for me to tell the court what its own decision says when it doesn't say that. You know. So what does it say? It says that the, you know, the only holding is that the 1383 is divisible and that the court made the statement that drunken driving is despicable as opposed to just sitting in one's car inebriated just in physical control that they don't think is a crime of moral turpitude. So you say it doesn't say it, it implies it? Or what is your argument? That's what I. I think the argument is that the court in there did hold that a portion of the Arizona statute is a CIMT. And even though it's divisible, the court looks like it did say that, to us at least, it appears that the court held that it appears that a portion of that statute is a crime of moral turpitude. Okay. But which portion is unseceded? And we haven't even talked about Matters Short, which said you can't take two non-turpidudinous crimes and equate them with a turpidudinous crime. Isn't that correct? Yes, Your Honor. But, you know, Matters Short was decided long before. Well, it's an older case. Yes, Your Honor. But Torres-Varela is a later case. Yes, it is, Your Honor. All right. Thank you. I appreciate your frankness with the court. I am trying to be as honest as I can with the court. Subject to the Court's questions? There don't appear to be further questions. Thank you for your argument. Thank you. I'll try to make a few quick points. Regarding the aggravated term or the state label, in United States v. Anderson, this Court rejected the above stated proposition that reliance on, quote, state labels was sufficient to establish that a state conviction satisfied a uniform federal definition of whether or not a crime involved moral turpitude. Thus, the label aggravated under Arizona statute does not necessarily indicate that the character of the offense for which the petitioner was convicted is one involving moral turpitude. State label, in other words, the fact that Arizona calls it aggravated DUI, doesn't enhance the turpitudinous of the offense or non-turpitudinous. Counsel for the government argued something regarding a synergism. While it is correct that an aggravated drunk driving conviction is based on a defendant driving his vehicle while intoxicated and a restriction on his license that may have been due to a prior drunk driving offense or other reasons, moral turpitude does not arise from some undefined synergism by which prior offenses may combine to create one crime of moral turpitude. The Court brought up matter of short. In matter of short, the Board determined that in order for assault to be a crime of moral turpitude, it had to be combined with another offense that independently involved moral turpitude. The Board stated unequivocally that two offenses that do not involve moral turpitude cannot be combined to create one offense that involves moral turpitude. The government's arguing that today. It's been rejected by the Board itself, in short, and by this Court also. Here there is nothing to suggest that 281383 or the case law defining this offense establishes that a drunk driver intends to use his vehicle to harm another person, even though this conduct certainly presents a risk that he may endanger safety. Indeed, I won't be able to get to the Third Circuit holding, but because Arizona's aggravated drunk driving statute does not involve the infliction of harm to another person or the intent of a defendant to use his vehicle to harm others, this Court should find that it does not involve moral turpitude. And I'm finished. Thank you. All right. Would you like to move to, did you have anything additional that you want to speak to factually on Marmolejo Campos, which I suppose maybe it might make sense. You know, I think you both have done an excellent job on a very difficult issue, and I think I can speak for the whole Court that we really appreciate both of your arguments. And to the extent that anything could be helpful, I think you've both been very helpful. On the, on your specific case, you know, maybe you want to assume the worst and then speak to the facts of why that your client still could prevail. I don't know. That just might. On that issue, assuming the worst, that we disagree with you about moral turpitude, is the record sufficient to show your client committed an aggravated, under Arizona law, DUI in 2002, and theft in 1990? And wouldn't this be sufficient, then, to render him deportable? Well, the theft offense, and this was never brought up in the record below, and I was counsel for him, preceded his adjustment to lawful permanent residence. The theft offense is in 1990. He adjusts. He has a 1997 aggravated DUI. He adjusts in court, I believe, in 2001, and then is convicted in 2002 of the second aggravated DUI offense. The board, in its decision, spoke, I think in the last paragraph, and said, well, regardless of the DUIs, in any case, the theft is also a CIMT offense, so, you know, we can make a finding using that. Of course, you need two CIMTs to find this gentleman deportable, and so there would have to be a finding that one of the aggravated DUI offenses is a CIMT in order for this respondent to be held deportable. The single theft offense would not be sufficient, and it was previously waived before he adjusted to lawful permanent residence status. But that waiver doesn't last your whole life. It doesn't, but it would have to be coupled with something. It would be a deadly way of changing itself, yes. And there's a case law and a regulation that permits that. However, it must be coupled with a new offense. It just can't be brought up. It is res judicata. It was decided and it was waived. So there would have to be new conduct which would make the respondent deportable. Assuming the worst, that the court would find that the statute is divisible and that the government could show that if the respondent was in control of the vehicle and was intoxicated that it would be a crime involving moral turpitude, the evidence submitted by the government here, the transcripts, are not sufficient. I think very much importantly, there is not sufficient proof that the respondent was driving while intoxicated. If you go through the transcript which was cited in the brief, it just says that he was driving that day and that he was given a blood alcohol test, and there's no result that that blood alcohol test was over the legal limit or that he was driving the vehicle at the time he was intoxicated. That's missing. Secondly, Mr. Kompos testifies that he never had a valid license. So to be convicted under this statute, your license must be canceled, revoked or suspended, which is difficult to have done to you if you've never had a license. I don't think you can suspend the privilege. Can you not? I don't know. I started out in traffic a long time ago. It's a little foggy, but it's. Well, it would be possible to do that. There has been no evidence introduced by the government that, in fact, his license or that any order was issued by the State of Arizona in immigration court that his license was suspended, revoked, canceled or anything else, any other conduct. It could be inferred since, in fact, he was convicted of that statute that potentially he was. Did Mr. Kompos concede removability after receiving the first aggravated DUI when he applied for a section 212H waiver? Yes. That's correct. For the theft offense? No. Didn't. He admitted that he was, in fact, convicted, but contested that they're removable offenses. So he's not contesting that he's not the person that was named in the notice to appear, and he's not contesting that he's not, has not been convicted of these, in fact, three offenses. Okay. That answers the Court's questions. But I think what this Marmolejo case puts before the Court, that it's very, very difficult looking at plea transcripts, and in this particular case points out the potential errors, the potential holes in the government's case where there is not sufficient proof in immigration court, even assuming under the divisibility argument that if the government can put the respondent in control of the vehicle with the suspended license and intoxicated, that's not been proven by the evidence submitted to the court. To the immigration judge, the BIA should have overruled it, and I believe this Court should also overrule the decision, Marmolejo specifically, on the facts. Okay. Can I reserve the balance for rebuttal? Yes. Thanks. Thank you. The one thing I wanted to point out was immediately is that Petitioner's brief in this case only touches on one of the CIMT offenses. He argues against the transcript of the 1996 conviction. He never touches in his brief about the 1990 theft offense, never challenges that as being factually insufficient. He never actually challenged the 2001 offense, the DUI offense, as being a CIMT, as being factually insufficient, documentarily insufficient. So his brief, as far as it's before this Court, touches only on one CIMT conviction. Well, assuming you – assuming the best for you, then – and if the modified categorical is done here, why should we affirm? Well, the documentary evidence here is sufficient. If you take a look at the actual transcripts here, the board here found that the 2002 transcript was sufficient, and that's contained on the guilty plea colloquy on page 126 of the record, which Petitioner was asked basically all the elements of the offense, was he drinking, were his driving privileges suspended, was he driving at the time, did he run a red light, and then he was asked, do you agree with the facts that the Court has been provided to the Court? He said, yes, Your Honor. So at that point, he has pretty much admitted all the relevant factual elements of that offense, and he's provident of that offense. So as far as the theft offense itself, that's also contained in the judgment of the record, which is on page 161 of the record. He also had a prior – he pled guilty to a false report or providing false information to a police officer in 1995? Yes, Your Honor. And is that coupled with the theft sufficient to make – or how does that work? Well, this Court, to my knowledge, has never explicitly said whether rap sheets are sufficient. Okay. So that's all that's in the record on that? On that offense, Your Honor. Okay. So all we have here is just this document regarding this offense, the false report offense, although we would argue because it's an intentional false crime, it would be a crime morally interpreted. So even if the Court finds that the guilty plea transcript, the co-acquittal plea that took place between the judge, it's contained on page 146 of the record and 147, which is what basically counsel argued about in their brief. In this particular instance, the judge could have done a better job of eliciting the factual basis for Petitioner's conviction. He could have asked the specific questions. Were you driving? Were you in control of your vehicle when you were drunk? Yes. Were you – was your license suspended? Yes or no. That didn't happen. But from the overall context, I think the Court can glean from the overall context of the guilty plea providence here that Petitioner did admit sufficient facts to, even on the 1996 conviction, the DUI conviction, aggravated DUI, to be, under the modified approach, to be sufficient, because he did admit that he was driving that day, he did admit he was drinking that day, and he did admit that he did not have a license. So even though he was specifically asked whether or not all these things took place at exactly the same time, that is, were you driving while you were drinking, you know, under the influence, he was specifically – but he was asked those questions. And I think if you read in – through – take it in context of why they're asking about drinking, why they're asking about driving, I think it's a good point. And he was also asked, were you given a blood or breath alcohol test within two hours after being stopped? Yes, Your Honor. Which adds further to your own argument. Yes, Your Honor. So I think that would also be sufficient to meet the modified categorical approach. Okay. Thank you. Yes, Your Honor. I don't have any additional rebuttals. If there's any questions the Court might have for me. There don't appear to be any. Thank you both again for your excellent argument. This matter will now stand submitted.
judges: D.W. Nelson, Callahan, Carney